OPINION OF THE COURT
Bruce M. Kaplan, J.
Respondent has moved for the following additional blood *613 tests: red blood cell serum protein tests, red blood cell enzyme tests and retesting for the HLA A and B series, as well as the C and DR series with the tests to be performed by a laboratory other than Roche Biomedical Laboratories Inc.
After consideration of the respondent’s papers the motion is denied.[1] There are a number of reasons that the court declines to order the relief requested by respondent. Respondent urges that after a blood-grouping test is ordered respondent can, as of right, demand an additional test. The court rejects respondent’s strained reading of Family Court Act § 532 for nothing in its language or the decisional law supports his position. While a blood-grouping test must be ordered, ordering additional testing rests in the sound discretion of the court.
The cases of Matter of Leromain v Venduro (114 AD2d 634 [3d Dept 1985]) and Matter of Kathleen EE. v Kevin FF. (Ill AD2d 1046 [3d Dept 1985]) do not support the proposition for which they are urged by respondent. There is no logical basis to equate the interests of persons seeking to confirm and augment a claim of inclusion with those of the respondent who seeks the retesting and additional testing for the ostensible purpose of enhancing his ability to disprove the accusation of paternity.
In Leromain (supra) additional tests were requested where the probability of paternity was only 93.4%. Kathleen EE. (supra) did not involve a request for additional testing. Its only significance is that it observed that only an HLA test was performed and not red blood cell antigen serum protein or red blood enzyme tests. In Matter of Catherine H. v James S. (112 Misc 2d 429) additional tests were ordered when a 92.3% probability of paternity was obtained without benefit of red blood cell serum protein and red blood cell enzyme tests.
It is of the utmost significance that in these cases in which additional tests were ordered the original probability of paternity was markedly lower than those in the instant matter. Even without red blood cell serum protein and red blood enzyme tests the respondent’s probabilities of paternity for petitioner’s children were, respectively, 99.69% for Nina M. and 99.92% for Zoe M.
In 1983 a leading expert in the field, Professor Konrad *614 Hummel, published a seminal work entitled Inclusion Probability in Parentage Testing (Am Assn of Blood Banks, 1983). In this work (at 241) Professor Hummel interpreted the likelihood of paternity based on a particular probability of paternity score. He stated that where the probability of paternity was between 94.9 and 90% the likelihood of paternity was only "probable”. It is understandable why the petitioners in Leromain (supra) and Catherine H. (supra) sought and received additional testing. In these matters the probability of paternity according to Hummel’s predicate was "probable” which is the fourth highest level of likelihood of paternity on a seven-level scale. Such a score is worthy of some consideration but hardly constitutes strong evidence of paternity. Since paternity proceedings are sensitive in nature, and fraught with weighty ramifications for the parties and the child or children, a court would be inclined to order further tests where the initial tests results were far from clear. In contrast, the probabilities of paternity in this matter which are, respectively, 99.69% and 99.92% constitute "practically proved” for one child, and a category between "highly probable” and "practically proved” for the other according to Hummel’s predicate. With these results it is understandable why additional testing was not requested by the petitioner.
Respondent requests the additional tests in order to strengthen his defense but it is difficult to discern how they could do so in this case.[2] There is no claim, let alone any scientific proof, asserted that there could be an exclusion based on the red blood cell serum protein and red blood cell enzyme test or the HLA, C, and DR series given the prior test results.[3] Had there been such an assertion supported by articulable scientific data the situation would be different. But it is more likely that all these tests could do was to produce a higher probability of paternity given the formula utilized to establish a probability of paternity is a sum of products, and the larger the number of test results the higher the probability.
There is another consideration that disposes this court to decline to grant the requested relief. The test results were obtained and available on May 4, 1987. Sometime thereafter *615 but certainly no later than June 4, 1987, this court held a conference with the attorneys to review the posture of the case in light of the test results. At that point in time, no additional blood tests were requested. This is significant because had respondent sought these further tests, expeditiously, it is entirely likely that they could have been conducted with the original blood samples drawn, and not require a redrawing of the blood of respondent, assignor and the children.
The court is constrained to observe that the delay and inconvenience that would be occasioned by granting this motion far outweigh the speculative benefits that would ensue from granting it.
Accordingly, the motion is in all respects denied.

. Respondent requested that this court not consider the papers submitted in opposition to his motion by the Commissioner of Social Services (CSS). Since the respondent demonstrated that the reply papers were submitted by CSS untimely and without permission of the court, the request is granted.

. The court makes this determination based on the facts of this case, and does not foreclose the right of a respondent to seek and be granted the ordering of additional blood tests in a proper case.

. The mere suggestion of the possibility of an error in testing is insufficient grounds to grant the relief requested.